# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 10, 2012

## STATE OF TENNESSEE v. JOSEPH THOMAS BLAKELY

**Direct Appeal from the Circuit Court for Gibson County**
**No. H-8758     Clayburn Peeples, Judge**

---

**No. W2011-02454-CCA-R3-CD  - Filed November 2, 2012**

---

The defendant, Joseph Thomas Blakely, was charged with two counts of rape of a child. A jury found him guilty of the first count but was unable to reach a unanimous decision on the second count. The defendant was sentenced to twenty years of imprisonment with a release eligibility of one hundred percent. The defendant appeals, challenging only the sufficiency of the evidence. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, J.J., joined.

Tom W. Crider, District Public Defender, and Linda Moore, Assistant District Public Defender, for the appellant, Joseph Thomas Blakely.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Garry Brown, District Attorney General; and Jason Scott and Larry Hardister, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural History

The defendant was indicted for two counts of rape of a child in violation of Tennessee Code Annotated section 39-13-522, a Class A felony. The first count charged that the defendant "on or before August 10, 2006 . . . did unlawfully and knowingly sexually

penetrate [Victim One[1]] by digital means," and the second count charged that the defendant "on or about August 9, 2006 . . . did unlawfully and knowingly perform cunnilingus" on Victim Two. The indictment was subsequently amended so that count one charged that the defendant "upon or after January 1, 1999 and on or before August 10, 2006 . . . did unlawfully and knowingly sexually penetrate" Victim One, and count two used the same language for Victim Two.

At trial, Victim One's mother, Pamela Jones, testified regarding familial relationships and living arrangements. Ms. Jones's grandmother, Effie Wilcox, lived in Humboldt, Tennessee. The defendant was Ms. Wilcox's son and lived or stayed with her for some of the relevant time. Ms. Wilcox's daughter was the mother of Ms. Jones and of Victim Two and the grandmother of Victim One. Thus, the defendant was the great-uncle of Victim One and the uncle of Victim Two. Although Victim One was only one year younger than Victim Two, Victim Two was the aunt of Victim One and the half sister of Ms. Jones. When Ms. Jones and Victim Two's mother died, Victim Two and her younger siblings continued to stay with Ms. Wilcox.

Ms. Jones testified that she initially lived in Ohio, but after her mother died, she moved to Humboldt, Tennessee in October 1999. At that time, with the exception of a three-month period during which she went back to Ohio, she was living at Plum Orchard Street, which was the home of her grandmother, Ms. Wilcox. The house had two bedrooms and a laundry room. One bedroom was occupied by the two victims and Victim Two's younger sister. The second bedroom was occupied by Victim One's older brother and Victim Two's younger brother. Ms. Wilcox slept on the couch, and Ms. Jones sometimes slept on the couch and sometimes with the girls. The defendant slept in a room with the washer and refrigerator.

At the end of 2001, Ms. Wilcox moved to an apartment, taking Ms. Jones's younger siblings, including Victim Two, with her. Ms. Jones and her children, including Victim One, continued to share the house with the defendant. In 2004, Ms. Jones and her children moved, first to Milan, Tennessee, and then back to Ohio. In 2005, prompted by her grandmother Ms. Wilcox's illness, Ms. Jones and her children moved back to Humboldt. At first, they stayed with Ms. Wilcox in a four-bedroom apartment. Ms. Wilcox had her own room but preferred to sleep on the couch; Ms. Jones slept in Ms. Wilcox's bedroom. The two victims shared a bedroom, and the boys shared a room. The defendant, when he spent the night, slept on a recliner or the couch. After "a couple" of months, they moved to an apartment within

---

[1]It has been our policy to refer to the child victims of sex offenses by their initials. In this case, we have decided to further protect the identity of the victims by omitting their initials. We will refer to the victims as Victim One and Victim Two, based on the charges in the indictment.

walking distance, where they continued to have frequent contact with Ms. Jones's siblings and grandmother. In 2006, Ms. Jones and her children moved to Milan, Tennessee.

In March 2007, the counselor at the school that Victim One attended called Ms. Jones and asked her to come to the school. The counselor told Ms. Jones about the allegations and notified the police. Ms. Jones requested that she type up a summary of what had occurred. Because Victim Two's name had been mentioned, Ms. Jones went to Victim Two's school and asked to see Victim Two and the school counselor. In the counselor's presence, she asked about the allegations. Ms. Jones testified, "I didn't tell her what was said. I just asked her did anything happen on Plum Orchard to you and at that nature. And she was telling me what happened and everything." Ms. Jones then met with the police.

Prior to learning of the abuse, Ms. Jones had believed the defendant had a good relationship with the girls, who were "basically...fatherless." She testified that when the girls revealed the abuse, everyone in the family chose a side.

Victim One testified that she moved to Humboldt at some point when she was about two to five years old. She confirmed her mother's testimony regarding the living arrangements at the Plum Orchard Street house. She testified that her family moved to Ohio when she was in the second or third grade, but shortly thereafter moved back to Tennessee when she was in the third or fourth. She testified she lived for a few months with her great-grandmother on Seymour Loop, where she shared a bedroom with Victim Two, while the victims' brothers shared a room, Victim Two's sister had her own room, and Ms. Wilcox had a bedroom which she did not occupy. The defendant "didn't live there[;] he was just always there," and would sleep on the couch. Victim One then moved with her family to an apartment which was a ten-minute walk away. She testified she visited every day and would spend the night on the weekends with Victim Two.

Victim One testified that at the Plum Orchard house, while Ms. Jones was at work and Ms. Wilcox was fishing, the defendant would keep her and the other victim indoors while the other children went outside to play. She testified the defendant assaulted them in his room and that he would make her take off her pants and sometimes her shirt so that he could "check [her] out." Victim One stated that she did not understand what was happening and she "thought it was like a doctor." She testified that the defendant touched her vaginal area and that this happened probably more than ten times in the two to three years she lived there. She testified that at the Seymour Loop apartment, the defendant would enter the girls' room at night and make them go to Ms. Wilcox's unoccupied room. Victim One testified that she and Victim Two would lock the bedroom door so that nobody could come in but that the lock was broken. The defendant would basically "do the same thing" he did at the house, but she testified that he also digitally penetrated her. She testified that after she moved to Milan,

Tennessee, when she was twelve years old, the abuse stopped.

Victim One testified that the defendant threatened to hurt her mother if she told anyone and that prior to the abuse, the defendant had been her favorite uncle who was like a father. Victim One finally revealed the abuse to her school counselor. She testified that she had arrived at school angry and been picked on by other kids. She got in trouble and was punished by the teacher, and she asked to see the counselor and confided in her. On cross-examination, she acknowledged that at the preliminary hearing, she had testified that she got in trouble for pinching people and that she had testified that she had seen a rape show on television the night before and had decided to tell people that the defendant had done something to her.

Victim Two confirmed Ms. Jones's testimony regarding the living arrangements at Plum Orchard Street. Victim Two testified that the defendant began to molest her after her mother's death in 1999. She testified that she would fall asleep in a bedroom with her sister and with Victim One and wake up in the defendant's bed. She testified that the defendant would perform oral sex on her and penetrated her with his finger and his penis. Victim Two testified that she would tell the defendant she had to use the bathroom and instead would return to her room. She testified that occasionally she would try to stay awake to keep the assault from happening, and that nothing happened when she stayed awake.

Victim Two testified that Ms. Wilcox and the children moved to the Seymour Loop address around 2001, and that the defendant continued to live there and abuse her. She testified that the abuse happened every night at that address, but subsequently testified that some nights she stayed awake and it didn't happen then. She testified that she was under thirteen the entire time, and that the abuse stopped when the defendant got married in 2005. Victim Two testified that the last time the defendant assaulted her, he made her perform oral sex. She confirmed Ms. Jones's testimony that she revealed the abuse when Ms. Jones came to her school. She testified that Ms. Jones asked if anything happened between her and her uncle. On cross-examination, she acknowledged that she had testified at the preliminary hearing that the events she described as happening at the Plum Orchard address had occurred at the Seymour Loop address. She testified he raped her at both locations. She also acknowledged that at the preliminary hearing she had stated that the defendant would take her into her brother's room, but she explained that the room she was referring to later became her brother's room. Victim Two testified that she was always alone and never with Victim One when her uncle molested her.

The defendant testified on his own behalf. He denied ever having any sexual contact with either victim. He testified that the Plum Orchard house had eight people living in a small space. He also testified that he only lived with Ms. Wilcox for about two weeks when

-4-

she had moved to the Seymour Loop address. On cross-examination, he testified that he believed both girls were truthful "[a]bout as much as anybody." He testified that he only stayed the night at the Seymour Loop address when he was asked to do odd jobs. He stated that the accusations had not divided the family because there had always been friction. The defendant testified he had no explanation for why the victims would make up the accusations.

The jury found the defendant guilty of the rape of Victim One, but was unable to reach a decision with regard to the charged rape of Victim Two. The trial court denied the defendant's motion for a new trial. The defendant appeals on the sole basis that he contends the evidence was insufficient to support the verdict.[2]

**Analysis**

Under Tennessee Rule of Appellate Procedure 13(e), this court is required to set aside a conviction "if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." In evaluating the sufficiency of the evidence, the court determines whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000). The reviewing court is not permitted to re-weigh or re-evaluate the evidence or substitute its inferences for those drawn by the trier of fact. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004). When the jury returns a guilty verdict approved by the trial judge, it accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). The presumption of innocence is replaced by a presumption of guilt, and the appellant bears the burden of proving that the evidence is insufficient to support the verdict. *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999).

Tennessee Code Annotated section 39-13-522 provides that "[r]ape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a). Sexual penetration includes "any . . . intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's." T.C.A. § 39-13-501(7).

---

[2]Although the defendant's brief contains a second subheading regarding error in sentencing, the body of this subheading consists entirely of a concession that there was no error.

Taking the evidence in the light most favorable to the State, as we must, the testimony given by Victim One established that the defendant digitally penetrated Victim One when she was less than thirteen years old. The defendant had the opportunity at trial to present his theory of the case: that Victim One invented the story in order to avoid getting into trouble at school. The jury, by finding the defendant guilty, determined that Victim One was a more credible witness than the defendant. Contrary to the defendant's assertion, a conviction for child rape may rest on the uncorroborated testimony of the victim. *See State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003). The evidence was sufficient to support the conviction.

## CONCLUSION

Based on the foregoing, we conclude that the evidence was sufficient to support the conviction and affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE